Judge Mills
delivered the opinion.*
The President, Directors, and Company of the Bank of Kentucky, brought their action of debt in the court below against David Dodge, Silas W. Robins, John Wilkinson, John Coons and George Norton, and declared on a negotiable note executed by said Dodge, to all the others jointly, and by them jointly endorsed to the bank, and protested for non-payment. The defendants below craved oyer of the note, and pleaded nil debit. On the trial of the issue the plaintiffs below gave in evidence the note aforesaid with its endorsements, which was read without objection, and proved that the note was discounted in the Washington Branch Bank, and that on the last day of grace, being the ninth *611 of October, 1818, it was protested for non-payment against both drawer and endorsers. That the cashier of the branch bank, forthwith wrote notices of the protest, to all the endorsers, and enclosed them in letters, one to go by mail to Winchester, where some of them resided, and one to Lexington, where Norton resided. That those to Winchester were enclosed to the cashier of the Winchester branch, with a request to him to have them served without delay, and the one to Lexington was enclosed to the cashier of the Lexington branch bank, with a like request. The cashier of the Washington branch further proved that he wrote those letters immediately after the hour of protest, and left them on the desk in the bank for the clerk of the bank to take them to the post office, and he supposed the clerk did so, as he saw them no more, and it was the custom of the bank for the clerk to take the letters prepared to send by mail to the post-office. One of these notices was produced with an endorsement thereon acknowledging the receipt of it on the 12th of the same month, October. This was the notice addressed to Norton at Lexington, and the endorsement purported to be made by him, and proof was adduced tending to shew that it was in his handwriting. It was further proved that the course of the mail from Washington to Lexiegton was then three times per week, and that from the same place to Winchester it was circuitous, and weekly only. The cashier of the Winchester branch deposed that he received the letter and enclosed notices to him, directly after the arrival of the mail, late on the evening of the 15th of the same month, October, and on the same evening delivered a copy to the endorser, Robins, who lived, in town; and on the next day, at a sale in the country, delivered the notice to Coons, and, on the same evening, to Wilkinson, they both living in the country, Wilkinson about five miles from town, in Clarke county, and Coons about ten miles, and about eight from Lexington, between Lexington and Winchester, or nearly so, but within the Fayette line. The cashier of the Washington branch further stated, that he had never seen Norton, but believed he lived in Lexington, as he had received divers letters from him on the subject of business of his own, which he had in the Washington branch, as well as notes sent to renew his own note: That believing he lived there, he enclosed the notice to Lexington, addressed to him. But that he did not know Coons or where he resided; nor did he make enquiry of any *612 person; and as the note in question was dated at Winchester, where Dodge, the drawer, resided, for whose benefit the note was discounted, he supposed, from this circumstance, that Coons also lived there, or in its vicinity, and hence he sent the notice for him there instead of Lexington, which was now proved to be his nearest post office. This being in substance the evidence in support of the issue on part of the plaintiffs below, the counsel for the defendants moved the court to instruct the jury as in case of a non suit. The court overruled this motion, and the jury found a verdict, for the appellees, on which judgment was rendered, and the defendants in that court prayed an appeal; and now rely upon the incorrectness of the opinion of the court below in overruling this motion, as the sole ground for reversing the judgment.
A motion as in case of a nonsuit partakes of the nature of a demurrer to evidence, and admits the verity of every fact which the testimony conduces to prove.
It has been contended in argument that the court below ought to have sustained this motion, because the appellees had introduced no proof of the handwriting of the endorsers; and the plea of nil debit cast the onus probandi in this respect on the appellees. This case has been likened to an issue on the plea of non est factum to a bond, where, if the plaintiff fails to prove the execution of the note, he cannot recover. However plausible this argument may appear at first blush, it will be completely overturned by attending to the distinction between a motion to instruct as in case of a non suit, and an objection to the admission of evidence. In the former, the evidence is admitted, but its applicability and sufficiency is contested; and in the latter case, the evidence, if the objection be valid, cannot be read at all to the jury. Motions to instruct as in case of non suit partake of the nature of a demurrer to evidence, and in modern practice is frequently indulged in lieu of a demurrer. It is frequently used when the allegata et probata do not agree, and the plaintiff proves a case not as he has laid it. And sometimes, it is permitted when the plaintiff gives no evidence proving, or conducing to prove, some material fact, which is a necessary link in the chain of facts, which compose his cause of action. In every motion, then, so to instruct a jury, every fact which the evidence proves, and conduces to prove, as well as those facts which may naturally and rationally be inferred from those proved, must necessarily be considered as admitted by the party making the motion; and the court is appealed to to say, after all these admissions, whether, in law, the plaintiff has made *613 out his cause of action. In the present case, then, the defendants below, for the purposes of the motion, of the benefit of which they intended to avail themselves, must be considered as taking the evidence as true, without further contest Of course it would be a contradiction to say that they admitted the endorsements to be read, and the effect of them afterwards, and, yet contended that they were not proved, and that the effect or them was nothing at all. How much more easily and properly could they have objected to the reading of the endorsements, unless they were proven to be genuine, and then not have troubled the court with adjudicating upon them as facts proven? This was the appropriate mode of reaching the question. Such also is the mode adopted in the case of an issue of non est factum. If the plaintiff gives no proof conducing to establish the execution of the instrument denied, he cannot read it at all to the jury. This is evidently the most fair mode of reaching the question, and a contrary practice might enshare the court below and surprise the opposite party. Witnesses fully able and competent to prove the execution of a paper necessary to be proved on a trial, might be at hand. The party against whom the paper was to be used, might waive their introduction, as he actually does, by suffering the paper to be read as genuine. The court might be called on to determine upon the applicability of the evidence, without a suggestion that the evidence ought not to be there; and after he was unsuccessful, suggest, for the first time in this court, that the genuineness of the writing was not established. It is evidently more proper to put him, in the first instance, to his objection against using the evidence, until its genuineness was shewn. It is true, that it is stated in the exception, that the defendants below made their motion “not admitting the competency of the plaintiff’s proof.” But this cannot be construed to mean more than that they reserved the right of making an objection to the competency, if unsuccessful in their motion; and that for the purposes of the motion it was to be considered as true. For we cannot suppose that the court below indulged the counsel for the defendants in the argument of a motion in case of a non suit, as the motion is stated to be, and with the right of contending in the same breath that the testimony ought not to be either heard or believed.
After a paper is permitted to go to the jury without exception 'tis too late to object to its authenticity in the court above.
But the want of proof of the handwriting of the endorsers admits of another answer still more irrefragible. By an *614 act of assembly, approved Dec. 18, 1801, for the purpose of further regulating proceedings in civil cases, (2 Lit. 440) it is provided, that in any suit “founded on any writing, whether the same be under seal or not, the court, before whom the suit is pending, shall receive the writing as evidence of the debt or duty for which it was given; and, it shall not be lawful for the defendants in any such suit to deny the execution of such writing," unless the plea has been filed under the sanctity of an oath. The only enquiry arising under this section, is, whether the endorsers in the present case comes within it? or was this action as to the endorsers founded on the endorsements which existed on the paper?
An endorsee of a bill of exchange, or note negotiable in bank, may sue and endorser on the endorsement alone, without averring a consideration—the law implies one; nor can the endorser question the endorsement but on oath.
This note thus negotiated with, or discounted by, the bank, is placed on the footing of a foreign bill of exchange, and in every respect the endorsee and endorser must stand in the same relation. Now, it is well settled, that where an endorsee may sue an endorser of such, bill, he may declare on the endorsement of the bill only, and need not state any consideration to have passed. That is presumed from the fact of endorsement. In such case the action is founded upon the endorsement, as much so as in the case of a suit against the maker of a promissory note. The endorsement is the essential fact on which the suit is founded. It is true the engagement is a contingent one, and therefore the plaintiff, in such cases, may be held to prove other facts to shew the contingency has happened, by which the defendant has become liable, such as the presentment of protest of the bill, and reasonable notice to the defendant; but this cannot materially alter the case. A promissory note may be drawn payable on not only one, but many contingencies, and a plaintiff on such note may be compelled to prove that all these contingencies have happened, before he can recover. But would it be fair to contend, that because the plaintiff was bound to prove these contingencies in addition to the note before he could recover, the note could not be within the act, and must itself be proved? Certainly not. It is therefore conceived by the court, that the endorsement of the appellants is a writing on which the action against them is founded, within the meaning of the act, and that the appellees having declared upon it, and not upon an existing debt or duty, of which they could adduce the endorsement as evidence, or other proof even by parol, the appellants ought not to have been permitted to require proof *615 thereof, unless their plea had been supported by affidavit, as the statute required.
If reasonable notice of the dishonor of a bill or negotiable in bank, be given to one of many joint endorsers, all are bound by it.
It has, however, been urged, that the court ought to have given the instruction as in case of non-suit in the present case, because the notice as to Coons was sent to Winchester, instead of to Lexington, his own county town, where, by the course of the mail, he might have received it, had he attended at the office, far sooner than he could do by the circuitous mail to Winchester; and that as Coons is joined with others, if he is not liable, the appellees could not recover in this action against any, who were liable.
The doctrine is well settled, that, with regard to foreign bills of exchange, when they are dishonored and protested, due notice must be given to all the endorsers, whom the holder or holders mean to make responsible for the contents. The note, in the present instance, being discounted by the bank, is placed on the same footing with foreign bills of exchange, “so that the like remedy with like effect must be had for the recovery thereof.” The same doctrine, therefore, with regard to notice between holder and endorser, must apply, and is attached by statute to, the note so far as a similarity exists between the note and a bill of exchange. But however well settled this principle may be with regard to notice, it has some well founded exceptions, and notice is sometimes dispensed with for a considerable length of time, and the endorsers still are made liable. It is contended in the present case, that the ignorance of the cashier as to the residence of Coons, and the presumption arising of his residing near where the bill was dated, ought not to excuse the failure to send the notice for him to Lexington instead of to Winchester, where he, after a length of time, actually received it.
We have not thought it necessary to enquire and determine whether this notice was sufficient. For the note is payable to him as a joint payee with the rest of the endorsers, and he jointly with them endorsed it; and although they do not appear to be partners in trade, yet quo ad hoc they must be so considered, that is, as one person. It then clearly follows, that each will have the right to claim that the one, which was most accessible by mail, should receive the notice in due time, and if he did so, each one must be affected by the notice; and as Norton resided in Lexington, whither the mail was most direct and most frequent, his notice ought to be in due time to affect both himself and co *616 endorsers. The question, then, will essentially turn on the sufficiency of Norton’s notice. For if it was sufficient as to him, the rest must be bound by it: if insufficient, they, as well as he, must be discharged.
Notice of a protest must go by the first mail after the protest.
What constitutes reasonable diligence in giving notice of protests, is matter of law to be decided by the court; But the speed used in exercising this diligence, & whether the nearest roads are travelled, are facts reposing with the jury.
It has been long settled, that where notice goes by mail, it must go by the first mail after the last day of grace is over, on which day the bill or note must be presented and protested. The question then arises, was this done in the case before us, particularly as to Norton, whose residence was known, and whom the mail could soonest reach? That there exists a mail in the United States established by law, is a matter of law of which the court ought to take judicial notice. But whether this or that particular road, out of many roads which may exist, from this town to that in the country, is a post road, and what is the course and number of mails per week, or per month, from or to any particular town in the state, depends on the arrangements made from time to time by the post-office department, and is not incorporated into our code of laws, and is, therefore, matters of fact, and must be proved as such, before this court can notice them. In like manner it has been held, that what constitutes reasonable diligence in giving notices to the endorsers of bills, is matter of law to be decided by the court. But the speed in exercising this diligence, and the forwarding notices at all, and the means by which it is sent are matters of fact to be proved and found by a jury. In this case the proof is not very precise and minute as to the course and days of the mail from Washington to Lexington. It is stated that the mail passed three times per week. But whether on three successive days of that week, with a cessation on the other four days is not stated; or whether at regular intervals of one day intervening between each mail, (in which case two days must occur together at some period in the week, when there would be no mail,) the testimony is equally silent. Neither does it appear, whether the mails started from Washington in the evening or the morning, on any particular day. It is evident, that if the mail started on the morning of the tenth, it being the first day after the days of grace were over, it could have reached Lexington the same evening. Or the tenth and eleventh might have been the two days of the week, which came together without any mail, in which case it could not be reasonably expected that the notice would reach Norton sooner than the twelfth, on which it was actually deliv *617 ered to him. This uncertainty in the proof as recited in the bill of exceptions has created some embarrassment in the cause, and has not left it so free of difficulty, as it might have been. But as it was proved that the letter was written, and left to be taken by the customary hand to the post office, and was seen no more after the days of grace were over, and it was acknowledged by Norton on the twelfth of the month, when the mails might have been, and probably were known to start every second or third morning from Washington, we conceive the facts might be, and were properly left to the jury, and that they might fairly presume that the notice went by the first mail to Lexington, we conceive that the first mail after the ninth of the month, or last day of grace was over, was that mail by which the plaintiffs were bound to forward a notice to Norton of the dishonor of the note, and on that ground we conceive the motion was properly overruled.
A declaration founded on endorsements must recite the endorsements truly—immaterial variance is fatal.
But in examining the evidence adduced, and on which the motion as in case of a non suit was made, and comparing it with the declaration we discover a variance, which has not been noticed in argument at the bar. The declaration recites a note made by Dodge, to the four payees, and that they endorsed it to the plaintiffs, who discounted it at the instance of, and for the benefit of Dodge. But, the note produced, although it agrees in sum, date, maker, and payees, yet it is not endorsed by the payees to the plaintiffs below, but the endorsements read thus:
“Pay to the order of David Dodge,
(Signed)
SILAS W. ROBBINS,
JOHN WILKENSON,
JOHN COONS,
GEORGE NORTON."
“Pay to the President, Directors, and Company of the bank of Kentucky.
(Signed) DAVID DODGE.”
This is so palpable a variance from the note or rather endorsements alledged, that we conceive it must be fatal. The title of the plaintiff on a bill of exchange must proved as laid, and each endorsement by which the plaintiff’s title accrued, must in proof correspond with those laid in the declaration. We are aware that these endorsements are frequently left blank, and are filled up at the time of the trial, and that then in the hurry and pressure *618 of business might have been filled up by mistake, disagreeing with what was laid in the declaration, and this mistake might have escaped the attention of the court below. But of this mistake as a matter of fact, we cannot take proof in this court, and there is nothing in the record which authorizes us to presume it.
Haggin for appellants, Hardin and Wickliffe for appellees.
The judgment of the court below must, therefore, be reversed with costs, and the cause remanded for new proceedings accordant with this opinion.

Absent, Judge Owsley.